### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM VICTOR,** | : | **CIVIL NO.3:11-CV-891** |
| | : | |
| **Plaintiff,** | : | **(Judge Nealon)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **D. VARANO,  et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a civil rights action brought by William Victor, a state inmate.  In his complaint filed on May 11, 2011, Victor, who is proceeding *pro se*, named 30 individual and institutional defendants, and alleged that these defendants have collectively harassed the plaintiff, denied him medical, dental and psychological care, and retaliated against Victor for pursuing other civil litigation against Department of Corrections officials.

This matter now comes before the Court for consideration of a motion for preliminary injunction filed by Victor. (Doc. 30.)  In this motion, Victor alleges that he is not receiving adequate mental health treatment and that he is subject to ridicule and intimidation by staff and other inmates because Defendants do not discuss his mental health issues in private.  Victor then seeks two, alternate forms of injunctive relief, asking that the Court either: order his transfer out of SCI-Coal Township; or

order the provision of "adequate [and] confidential mental health therapy in a secure area of the RHU as well as arrange [sic] consult and examination to secure relief from sever[sic] pain in face, ear [and] mouth." (Id.)

The defendants have now responded to this motion, (Docs. 37 and 38), submitting declarations from Charlene Schuster, the Mental Health Coordinator at SCI-Coal Township, and Kandis Dascani, the Assistant to the Superintendent at SCI Coal Township. In her declaration, Ms. Schuster disputes Victor's representation that he currently suffers from post traumatic stress disorder, explaining instead that Victor's current diagnosis is one of an Anti-Social Personality Disorder. (Doc. 38, Ex. A.) Ms. Schuster then describes the level of psychological care that Victor is receiving, stating that Victor is presently seen by psychology staff "on an almost weekly basis because he repeatedly requests to be seen. Otherwise, he is seen at least monthly in accordance with Department Policy." (Id.) Ms. Dascani, in turn, documents in her declaration that Victor has failed to exhaust administrative remedies with respect to the requests for injunctive relief set forth in this motion for preliminary injunction. (Id., Ex. B.)

The parties have fully briefed this motion for preliminary injunction. (Docs. 30, 31, 37, and 38) Accordingly, this matter is now ripe for resolution. For the reasons

set forth below, it is recommended that the plaintiff's motion for preliminary injunction be denied.

## II.   <u>Discussion</u>

### A.   <u>Preliminary Injunction Rule 65– The Legal Standard.</u>

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." <u>Gerardi v. Pelullo</u>, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting <u>SI Handling Systems, Inc. v. Heisley</u>, 753 F.2d 1244, 1254 (3d Cir. 1985)). <u>See also Highmark, Inc. v. UPMC Health Plan, Inc.</u>, 276 F.3d 160, 170-71 (3d Cir. 2001); <u>Emile v. SCI-Pittsburgh</u>, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. <u>Kerschner v. Mazurkewicz</u>, 670 F.2d 440, 443 (3d Cir. 1982) (affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials). It is an extraordinary remedy.  Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.  As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " <u>Emile</u>, 2006 WL 2773261, at * 6 (quoting <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F .2d 86, 91 (3d Cir.1992)).  Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." <u>Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53</u>, 520 F.2d 1220, 1230 (6th Cir.1975), <u>cert. denied</u>, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." <u>Madison Square Garden Corp. v. Braddock</u>, 90 F.2d 924, 927 (3d Cir.1937).

> <u>Emile</u>, 2006 WL 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate both a reasonable

likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443.  If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

These limitations on the power of courts to enter injunctions in a correctional context are further underscored by statute.  Specifically, 18 U.S.C. §3626, limits the authority of courts to enjoin the exercise of discretion by prison officials, and provides that:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C.A. § 3626(a)(1)(A).

With respect to preliminary injunctions sought by inmates, courts are further instructed that:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C.A. § 3626(a)(2).

Furthermore, several other basic legal tenets guide our discretion in this particular case, where Victor: (1) requests injunctive relief of a presumably permanent nature without first fully exhausting administrative remedies; and (2) requests relief which goes beyond merely preserving the *status quo* in this litigation, but seeks to impose new, mandatory conditions on prison officials. Each of these aspects of Victor's prayer for injunctive relief presents separate problems and concerns.

At the outset, a request for some form of mandatory proactive injunctive relief in the prison context "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518 (3d Cir. 1995). Moreover, where a plaintiff seeks injunctive relief of a presumably permanent nature, as Victor does in this case, the plaintiff's failure to timely exhaust his administrative remedies

may have substantive significance since the Prison Litigation Reform Act provides

that "[n]o action shall be brought with respect to prison conditions under . . . [42

U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies

to a wide-range of inmate complaints, including complaints like those made here

grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372

F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this

exhaustion requirement is not a jurisdictional bar to litigation, this requirement is

strictly enforced by the courts. This rigorous enforcement is mandated by a

fundamental recognition that § 1997e's exhaustion requirement promotes important

public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been

held that there is no futility exception to § 1997e's exhaustion requirement. Id.

Instead, courts have typically required across-the-board administrative exhaustion by

inmate plaintiffs who seek to pursue claims in federal court. Moreover, courts have

also imposed a procedural default component on this exhaustion requirement, holding

that inmates must fully satisfy the administrative requirements of the inmate grievance

process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir.

2004). Applying this procedural default standard to § 1997e's exhaustion

requirement, courts have concluded that inmates who fail to fully, or timely, complete

the prison grievance process are barred from subsequently litigating claims in federal

court; see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland,

304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006),

including requests for injunctive relief in a prison context. Ghana v. Holland, 226 F.3d

175 (3d Cir. 2000).

In addition, to the extent that Victor seeks a preliminary injunction with some

enduring effect, he must show that he will be irreparably injured by the denial of this

extraordinary relief.   With respect to this benchmark standard for a preliminary

injunction, in this context it is clear that:

> Irreparable injury is established by showing that Plaintiff will suffer harm
> that "cannot be redressed by a legal or an equitable remedy following
> trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801
> (3d Cir.1989) ("The preliminary injunction must be the only way of
> protecting the plaintiff from harm"). Plaintiff bears this burden of
> showing irreparable injury. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.),
> cert. denied, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989). In
> fact, the Plaintiff must show *immediate* irreparable injury, which is more
> than merely serious or substantial harm. ECRI v. McGraw-Hill, Inc., 809
> F.2d 223, 226 (3d Cir.1987). The case law provides some assistance in
> determining that injury which is irreparable under this standard. "The
> word irreparable connotes 'that which cannot be repaired, retrieved, put
> down again, atoned for ...'." Acierno v. New Castle County, 40 F.3d 645,
> 653 (3d Cir.1994) (citations omitted). Additionally, "the claimed injury
> cannot merely be possible, speculative or remote." Dice v. Clinicorp,
> Inc., 887 F.Supp. 803, 809 (W.D.Pa.1995). An injunction is not issued
> "simply to eliminate the possibility of a remote future injury ..." Acierno,
> 40 F.3d at 655 (citation omitted).

Messner, 2009 WL 1406986, at *4 .

Furthermore, it is well-settled that "[t]he purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits." Anderson v. Davila, 125 F.3d 148, 156 (3d Cir. 1997).  Therefore, in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] Plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of Defendants' motion to dismiss, or at trial.  As a result, Plaintiff's motion for preliminary injunction should be denied." Messner, 2009 WL 1406986, at *5

Finally, in assessing a motion for preliminary injunction, the court must also consider two other factors: (1) the possible harm to other interested parties if the relief is granted, Kershner, 670 F.2d at 443; and (2) whether the issuance of the injunctive relief would not be adverse to the public interest. Emile, 2006 WL 2773261, at * 6 (citing Dominion Video Satellite, Inc. v. Echostar Corp., 269 F.3d 1149, 1154 (10th Cir.2001)).

**B.** **Victor's Request For Injunctive Relief Should Be Denied**

    **1.** **Victor Has Not Shown a Likelihood of Success on The Merits of His Claims**

Judged against these exacting standards, in its current form, Victor's motion for preliminary injunctive relief fails. At the outset, we note that Victor has not carried his threshold burden of showing a likelihood that he would prevail on the merits of his claims.

In this regard, in the past, inmates have frequently sought preliminary injunctive relief similar to that demanded by Victor here, compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit.  Yet, such requests, while often made, are rarely embraced by the courts.  Instead, courts have routinely held that prisoner-plaintiffs are not entitled to use a motion for injunctive relief as a vehicle to compel prison officials to provide them with specific relief and services pending completion of their lawsuits.  Thus, courts have rejected inmate requests for injunctions mandating specific housing conditions for prisoners. See, e.g., Messner v. Bunner, No. 07-112E, 2009 WL 1406986 (W.D.Pa. May 19, 2009)(denying inmate preliminary injunction); Brown v. Sobina, No. 08-128E, 2008 WL 4500482 (W.D.Pa. Oct. 7, 2008)(denying inmate preliminary injunction); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006) (denying inmate preliminary injunction).

Similarly, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific treatment for inmates.  In such instances, courts have typically declined such requests citing the

inmate's failure to either demonstrate irreparable harm; <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F. App'x 749 (3d Cir. 2009); <u>Rush v. Correctional Medical Services, Inc</u>., 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits. <u>Quinn v. Palakovich</u>, 204 F. App'x 116 (3d Cir. 2006).

In this case, our review of the plaintiff's motion for injunctive relief leads us to conclude that Victor has not made the demanding showing required for this extraordinary form of relief. First, Victor has not met his threshold obligation of showing reasonable probability of success on the merits. For example, to the extent that Victor requests an order directing that he be transferred to some other prison, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. <u>Moody v. Daggett</u>, 429 U.S. 78, 88 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." <u>Id.</u> Given these existing legal impediments to Victor's claims, we cannot find that Victor has shown a likelihood of success on the merits of his claims that he is entitled to a court order directing a prison transfer for this inmate.

Similarly, Victor's request for specific types of psychological counseling are judged against an exacting standard. To sustain a constitutional Eighth Amendment

claim against prison officials relating to their care for a prisoner, the prisoner-plaintiff

must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel,256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the

courts have held that a mere generalized knowledge that prisons are dangerous places

does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x

743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff

complained about cellmate who had a history of psychological problems, but where

plaintiff failed to articulate a specific threat of harm during the weeks prior to an

attack.)  In short, when "analyzing deliberate indifference, a court must determine

whether the prison official 'acted or failed to act despite his knowledge of a substantial

risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner

plaintiff must prove that the prison official 'knows of and disregards an excessive risk

to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL

569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106.  "Indeed, prison authorities are accorded

considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth

Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x. at 197-198 (citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994). Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a

constitutional claim; see e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F. App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

These principles apply to constitutional claims relating to inmate psychological care, like those advanced by Victor in this case.  Thus, where it is shown that an inmate is receiving regular, and almost weekly, mental health counseling, requests for injunctive relief, in the form of orders directing a prison transfer or some additional heightened level of care, have been rejected by the courts. See Sides v. Law, 283 F. App'x 930 (3d Cir. 2008).

These principles are directly applicable here, where we are called upon to assess an inmate's request for a preliminary injunction specifying particular types of psychological care for this prisoner.  Given the fact that Victor is presently seen by psychology staff "on an almost weekly basis because he repeatedly requests to be seen . . . [and] [o]therwise . . is seen at least monthly in accordance with Department Policy," (Doc. 38. Ex. A), it cannot be said that Victor has demonstrated at this

juncture a likelihood of success on his claims that prison officials are deliberately indifferent to his psychological needs, the legal benchmark for success on a claim in this institutional setting. <u>Sides v. Law</u>, 283 F. App'x 930 (3d Cir. 2008).

> **2.   Victor's Motion Does Not Comply With the Procedural Requirements Set By Statute For Inmate Injunctive Relief**

Beyond this failure to demonstrate a likelihood of success on the merits, Victor's latest motion for injunctive relief is wanting in several other respects. For example, the motion does not address the demanding standards prescribed by caselaw and statute for such injunctions, in that the plaintiff does not present a prayer for relief which is "narrowly drawn, extend[s] no further than necessary to correct the harm . . ., and [is] the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). Quite the contrary, the prayer for relief here is cast broadly and would invite the court to intervene in prison housing, and health care issues in a particularly intrusive and inappropriate way.

Nor does the motion explain whether, and to what extent, administrative relief has been sought, and exhausted, with respect to these matters, which appear to have been the subject of grievance proceedings. Indeed, the defendants have affirmatively shown that Victor has not exhausted his administrative remedies before seeking injunctive relief of this enduring character. In this setting, the failure of Victor to address these matters has substantive significance to the extent that he seeks a

permanent injunction of some sort from the court, since the plaintiff's failure to timely exhaust his administrative remedies may have substantive significance since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). Courts typically require across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court and impose a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court; see, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006), including requests for injunctive relief in a prison context. Ghana v. Holland, 226 F.3d 175 (3d Cir. 2000). Therefore, Victor's motion for injunctive relief is procedurally flawed in that it does not, and apparently cannot, show that the plaintiff has exhausted his administrative remedies before proceeding into federal court.

### 3.    Victor Has Not Demonstrated Irreparable Harm

Further, while we do not in any way diminish Victor's complaints, we find–as many other courts have found when presented with similar complaints–that this inmate has not shown an immediate irreparable harm justifying a preliminary injunction. See e.g., Rivera v. Pennsylvania Dep't. Of Corrections, 346 F. App'x 749 (3d Cir. 2009)(denying inmate request for injunction); Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008)(same).  In this regard, when considering this benchmark standard for a preliminary injunction, whether the movant will be irreparably injured by denial of the relief, it is clear that: "Irreparable injury is established by showing that Plaintiff will suffer harm that 'cannot be redressed by a legal or an equitable remedy following trial.' Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989) ('The preliminary injunction must be the only way of protecting the plaintiff from harm')." Messner, 2009 WL 1406986, at *4.  Moreover, in this context, the word irreparable has a specific meaning and connotes "that which cannot be repaired, retrieved, put down again, [or] atoned for ...." Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). Thus, an injunction will not issue "simply to eliminate the possibility of a remote future injury ..." Acierno, 40 F.3d at 655 (citation omitted).  Therefore, where an inmate-plaintiff is alleging that damages may be an adequate remedy, a preliminary injunction is often not appropriate since the inmate has not shown that he faces

-19-

immediate, *irreparable* harm. <u>Rivera v. Pennsylvania Dep't. Of Corrections</u>, 346 F. App'x 749 (3d Cir. 2009); <u>Rush v. Correctional Medical Services, Inc.</u>, 287 F. App'x 142 (3d Cir. 2008).

Applying these legal standards in a case such as this, where the inmate-"Plaintiff's request for immediate relief in his motion for preliminary injunction necessarily seeks resolution of one of the ultimate issues presented in [the] . . . Complaint, . . . [the] plaintiff cannot demonstrate that he will suffer irreparable harm if he is not granted a preliminary injunction, because the ultimate issue presented will be decided either by this Court, upon consideration of defendants' motion to dismiss, or at trial. As a result, plaintiff's motion for preliminary injunction should be denied." <u>Messner</u>, 2009 WL 1406986, at *5.   In this case, as we view it, the preliminary injunctive relief sought in this case directly relates to the merits of some of the ultimate issues in this lawsuit.   Since the ultimate issues in this lawsuit are inextricably intertwined with the assertions in this motion for preliminary injunction, a ruling on the motion might be perceived as speaking in some way to the ultimate issues in this case.  In such instances we should refrain from prematurely granting such relief.

**4.     The Balancing of Other Interests Weighs Against Granting a Preliminary Injunction**

Further, we note that granting this injunctive relief, which would effectively have the federal courts making *ad hoc*, and individual, decisions concerning the treatment of a single state prisoner, could harm both the defendants' and the public's interest.  In this prison context, the defendants' interests  and the public's interest in penological order could be adversely effected if the Court began dictating the transfer or treatment for the plaintiff, one inmate out of thousands treated in the Commonwealth's prison system.   Therefore, consideration of "whether granting preliminary relief will result in even greater harm to the nonmoving party; and . . . whether granting the preliminary relief will be in the public interest," Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994), weighs heavily against Victor in this case.

In sum, Victor has not met the procedural prerequisites for injunctive relief in this setting, and has not shown either a likelihood of success or that he will suffer a wholly irreparable harm.  Moreover, a balancing of the interests of the defendants and the public weighs against entry of a preliminary injunction.  Therefore, this motion for preliminary injunction should be denied.

**III**.   **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of the motion for injunctive relief, (Doc. 30 and 31) IT IS RECOMMENDED that the motion be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of September, 2011.

*S/MARTIN C. CARLSON*
Martin C. Carlson
United States Magistrate Judge