**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM VICTOR,** | : | |
| | : | **Civil No. 3:11-CV-891** |
| **Plaintiff** | : | |
| | : | **(Judge Nealon)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAVID VARANO, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

Now pending before the Court in the above-captioned action is Plaintiff

William Victor's motion for relief, sanctions, and an order compelling the

Defendants to produce documents and other discovery. (Doc. 47.) The motion is

fully briefed and is ripe for disposition. For the reasons that follow, the motion

will be denied.

## I.   INTRODUCTION

### A.   Factual Background

William Victor, an inmate in the custody of the Pennsylvania Department of

Corrections, currently incarcerated in the Special Management Unit at the State

Correctional Institution at Camp Hill ("SCI-Camp Hill"), commenced the above-

captioned action on May 11, 2011. (Doc. 1) Victor amended the complaint on

July 12, 2011.[1]  (Doc. 23)  In his amended complaint Victor brought eight claims

against more than 20 Defendants, supervisory officials, corrections officers, the

Bureau of Health Care Services, the Department of Corrections, and the "Oral

Surgeon Staff" at SCI-Coal Township, where Victor was incarcerated when the

incidents giving rise to this lawsuit allegedly occurred.[2]  (Id.)

In his amended complaint, Victor alleges that on May 5, 2010, Defendant

Young issued him a misconduct for being out of place, making threats, and

refusing a direct order.  Victor claims that this misconduct was entirely fabricated

in retaliation for Victor's exercise of his "right to secure redress for prison pattern

of harassment and oppression."  (Id., Claim #2.)  Victor further alleges that on July

13, 2010, he was issued another false misconduct for refusing to accept a

settlement offer that the Department of Corrections extended to him in an effort to

resolve Victor's claims brought in a separate federal lawsuit pending before this

---

[1]  Victor has subsequently filed a motion for leave to file a second amended complaint.  (Doc. 98)  This motion is pending before the Court and will be addressed in a subsequent order.

[2]  The undersigned judicial officer was also included among the Defendants named in the amended complaint, although all such claims were dismissed by the District Court as frivolous on August 12, 2011.  (Doc. 33)

Court, Civil Action No. 08-1374.[3]  With respect to this incident, Victor claims that Defendants Young, Rudon, and Baumbach falsely accused Victor of flooding his cell, which resulted in the water to Victor's cell being shut off for seven days. (Id., Claim #3.)

In his fourth claim, Victor alleges that on March 24, 2011, Defendants Greene, Fanella, Novallis, and Weidensaul "trashed" his cell during a search that was undertaken in an effort to destroy evidence in Civil Action No. 08-1374, and that it was acknowledged that the documents were destroyed accidentally.  (Id., Claim #4.)  Victor claims that "subsequent efforts to secure compensation via Varano and Dascani were met with threats, hostility and an offer of fifty dollars which [Victor] refused," apparently at least in part because Victor showed prison officials that he had already spent nearly $200 on court fees and in excess of $200 on copying charges from the prison library.  (Id.)  Victor casts this as a claim for First Amendment retaliation, and for violations of his right of access to the courts. (Id.)

Victor next claims that on April 28, 2011, Defendants Kitchen and Dalton "used deliberate and unnecessary force," and assaulted him, during the course of

---

[3]  Trial in that action is scheduled to begin before a jury on May 21, 2011, in Scranton, Pennsylvania.

escorting Victor from the Restricted Housing Unit at SCI-Coal to the law library, and threatened Victor for filing complaints against other prison staff and "witnessing abuse on others." (<u>Id.</u>, Claim #5.)  Victor claims that despite his having been assaulted, no prison official contacted the medical department at SCI-Coal for two hours, when a mental health worker came to see him.  (<u>Id.</u>)  On the basis of these averments, Victor claims that these Defendants subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, and retaliation for exercising his First Amendment rights.  (<u>Id.</u>)

Next, Victor alleges that Defendants Sidler, Schuster, Michael, Varano, and Ellett deprived him of mental health treatment, and refused to protect his confidentiality in mental-health matters by "revealing the content of [his] suffering to non-mental health staff and RHU prisoners & doing so by entering RHU units at cells [he] [has] been housed in since [his] stay at Coal 2/17/10 to and through the date of this [filing] and loudly speaking on the matters of [his] suffering." (<u>Id.</u>, Claim #6.)  Victor claims that this has resulted in other inmates ridiculing him. (<u>Id.</u>)  In addition, Victor claims that the Defendants will not transfer him to another program within the Department of Corrections, available at other prisons, where he could be treated for his mental illness.  (<u>Id.</u>)  Victor casts this claim as

one of deliberate indifference to his medical needs, in violation of the Eighth Amendment.  (Id.)

In his seventh claim for relief, Victor alleges that the dental department at SCI-Coal Township, its oral surgeon, and the Bureau of Health Care Services have been deliberately indifferent to the injury he suffered in June 2008 while housed at SCI-Huntingdon, when he sustained a broken jaw during a cell extraction.  That incident is the subject of Victor's separate litigation in Civil Action No. 08-1374. (Id., Claim #7.)  Victor claims that he continues to suffer from serious pain, loss of sleep, and has difficulty eating and drinking.  Victor alleges that prison officials have been dismissive or indifferent to his pain and suffering.  (Id.)

Finally, Victor claims that on May 11, 2011, Defendants Allen and Kitchen "conspired to plant contraband in the exercise yard in the RHU," and Defendant Allen issued him a misconduct that Victor claims was fabricated, in retaliation for Victor filing a complaint against Defendant Kitchen for allegedly assaulting and threatening him on April 28, 2011.  (Id., Claim #8.)  In connection with this claim, Victor alleges that he had been trying to maintain positive housing reports so that he could work towards being released from the RHU, but instead he was given an additional 90 days of restricted housing time.  (Id.)

### B.    Plaintiff's Motion for Relief, Sanctions, and to Compel

Plaintiff filed the instant motion seeking sanctions and an order compelling Defendants to produce discovery in this case that he argues will support his claims against Defendants Young, Rudon, and Baumbach.  (Doc. 47)  Specifically, Victor argues that he is entitled to sanctions against the Corrections Defendants for what he alleges was the "deliberate destruction of relevant video evidence timely sought to support claims" against these three Defendants.  (Id.)  Plaintiff also complains that Defendant Dascani, with the help of Defendants' counsel, has frustrated his attempts to secure discovery by delaying production for no legitimate reason.  Victor alleges that he was supposed to receive discovery by September 15, 2011, but Defendants failed to make a timely production.  (Id.)

In his brief, Plaintiff asserts that he requires the following evidence from Defendants, which was not produced:  (1) log book entries reflecting the times in the RHU at SCI-Coal Township when he was escorted to and from the exercise yard on May 5, 2010, and May 11, 2010; (2) all DC-17X entries relating to Plaintiff from the time he arrived at SCI-Coal through the date of the amended complaint; (3) a category of discovery he describes as "claims from the 5/5/10, 7/13/10, 3/24/11, 4/28/11, 5/11/11 claims to support claims and secure relevant evidence and secure witnesses"; (4) all handheld footage of all escorts of Plaintiff

from April 28, 2011, through the date of the amended complaint "to search and secure evidence to support abuse and retaliation claims"; (5) all medical documents relating to injuries "in this matter"; (6)  a list of all past and present civil actions involving any of the defendants, and the results of those actions; (7) copies of comments and reports that mental health staff made regarding the Plaintiff between February 17, 2010, through the date of the amended complaint. (Doc. 48, at 2)  Plaintiff also urges this Court to undertake an *in camera* inquiry into the Department of Corrections' policies governing the preservation of handheld video footage "when a warden orders a RHU prisoner to be video taped any time he is removed from cell and escorted anywhere in facility ...."  (Id.) Finally, Plaintiff seeks color photographs taken following the April 28, 2011, incident during which he alleges he was assaulted by Defendant Kitchen, as well as the handheld footage from that day following the incident.  (Id.)

Defendants respond that there is no basis for an order compelling further discovery production, or sanctions in this case.  Instead, Defendants represent that they have produced responsive discovery, and have otherwise properly responded to Victor's discovery demands, and continue to do so with respect to supplemental requests that Victor has made.  Defendants also argue that although Victor was not able to review the discovery prior to September 15, 2011, they note he did review

the documents for several hours over the following two weeks.  Defendants note

that arrangements were being made to permit Victor review produced medical

records for a reasonable amount of time.  (Doc. 50, at 8-9)  With respect to other

discovery requests, Defendants maintain that the discovery Victor seeks is simply

unavailable, such as videotapes that were recycled in the ordinary course of

business because they did not reveal any significant incidents.  With respect to a

smaller category of discovery requests, Defendants have objected on the basis of

relevance, undue burden, and privacy concerns.  We discuss these issues below.

## II.   DISCUSSION

### A.   Legal Standards Governing Motions to Compel Discovery

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope

and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General.  Unless otherwise limited by court
> order, the scope of discovery is as follows: Parties may
> obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense – including the
> existence, description, nature, custody, condition, and
> location of any documents or other tangible things and
> the identity and location of persons who know of any
> discoverable matter.  For good cause, the court may
> order discovery of any matter relevant to the subject
> matter involved in the action.  Relevant information need
> not be admissible at trial if the discovery appears
> reasonably calculated to lead to the discovery of

>admissible evidence.  All discovery is subject to the
>limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  This  motion, and the Defendants' response in opposition

to this motion, call upon the Court to exercise its authority under Rule 26 of the

Federal Rules of Civil procedure to regulate discovery in this case.  Issues relating

to the scope of discovery permitted under the Rules rest in the sound discretion of

the Court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).

A court's decisions regarding the conduct of discovery will be disturbed only upon

a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d

129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles.  Thus, at the

outset, it is clear that Rule 26's broad definition of that which can be obtained

through discovery reaches only "nonprivileged matter that is relevant to any

party's claim or defense".  Therefore, valid claims of privilege still cabin and

restrict the court's discretion in ruling on discovery issues.  Furthermore, the scope

of discovery permitted by Rule 26 embraces all "relevant information"  a concept

which is defined in the following terms:  "Relevant information need not be

admissible at trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence."

Rule 34, governing production of documents in discovery, provides as

follows:

> (a) In General. A party may serve on any other party a
> request within the scope of Rule 26(b):
>
> (1) to produce and permit the requesting party or its
> representative to inspect, copy, test, or sample the
> following items in the responding party's possession,
> custody, or control:
>
> (A) any designated documents or electronically stored
> information—including writings, drawings, graphs,
> charts, photographs, sound recordings, images, and other
> data or data compilations—stored in any medium from
> which information can be obtained either directly or, if
> necessary, after translation by the responding party into a
> reasonably usable form; or
>
> (B) any designated tangible things; or
>
> (2) to permit entry onto designated land or other property
> possessed or controlled by the responding party, so that
> the requesting party may inspect, measure, survey,
> photograph, test, or sample the property or any
> designated object or operation on it.
>
> (b) Procedure.
>
> (1) Contents of the Request. The request:
>
> (A) must describe with reasonable particularity each item
> or category of items to be inspected;

(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

(C) may specify the form or forms in which electronically stored information is to be produced.

(2) Responses and Objections.

(A) Time to Respond. The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court.

(B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.

(C) Objections. An objection to part of a request must specify the part and permit inspection of the rest.

(D) Responding to a Request for Production of Electronically Stored Information. The response may state an objection to a requested form for producing electronically stored information. If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or for it intends to  use.

(E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(I) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34.

Rule 37 authorizes a party to move to compel disclosure if the party propounding discovery believes that it has received incomplete or inadequate answers to discover authorized under Rule 26.  Fed. R. Civ. P. 37.  With respect specifically to requests for production of documents and interrogatories, Rule 37 provides:

(B) To Compel a Discovery Response.  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:
...

(iii) a party fails to answer an interrogatory submitted under Rule 33; or

(iv) a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B).  Rule 37 further states that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).  Rule 37(a) further provides that if a court grants a motion to compel, it must require the party whose conduct necessitated the motion to pay the moving party's fees unless, *inter alia*, the movant filed the motion without attempting in good faith to obtain the discovery without resorting to court action, or where other circumstances make an award of expenses unjustified.  Fed. R. Civ. P. 37(a)(5)(A).

Courts have broad discretion regarding the type of sanctions that may be imposed, as well as the degree of such sanctions, but any sanctions imposed must be just and related to the claims at issue.  Insurance Corp. v. Compagnie des Bauxites, 456 U.S. 694, 707 (1982); Wachtel v. Health Net, Inc., 239 F.R.D. 81, 84 (D.N.J. 2006).  See also National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642 (1976) (per curiam) (whether to impose sanctions and what sanctions to impose are generally matters entrusted to the court's discretion).

With the foregoing standards in mind, and in consideration of Defendants' representations to the Court regarding what has been produced, what will be produced, and what is simply unavailable to be produced, we find that there is no basis to enter an order compelling Defendants to produce documents.

**B.   There is No Basis to Compel Further Production or to Impose Sanctions.**

    **1.   Document Request Nos. 1-3.**

In his first discovery requests, Victor sought "photos of injuries by Security and Medical from the April 28, 2011 incident with Officer Kitchen as well as the handheld videotape footage for review of that day following incident." (Doc. 48-1) Victor also seeks video footage from a number of other days, including May 5, 2010, May 5, 2011, July 13, 2010, and March 24, 2011. In response, Defendants advised Victor that he could arrange for an opportunity to view, but not retain, the handheld video footage take of his escort from the law library to the strip cage on April 28, 2011, and to review the photographs that were taken on that day. Plaintiff was also informed that he could obtain copies of the photographs at his own expense, in accordance with Department of Corrections Policy DC-ADM 003 governing "Release of Information."

Defendants dispute Victor's suggestion that they have destroyed video footage from April 28, 2011, and instead represent that there is no available handheld video footage of the escort from Victor's cell to the library on April 28, 2011, and that there is similarly no video footage available for May 5, 2010. With respect to video footage from July 13, 2010, and March 24, 2011, which were the

subject of Document Request Nos. 2 and 3 (Doc. 48-1), Defendants have represented to the Court and to Victor that videos from these days were recycled in the ordinary course of business because no significant incidents appeared on tapes from those days.

Upon consideration, we find that Victor has failed to substantiate his claim that Defendants have deliberately destroyed evidence in this case, and we credit Defendants' representations that the video evidence that Victor has requested simply does not exist because it was recycled in the ordinary course of business. Defendants have identified the extant video footage that remains available, and have informed Victor that he may make arrangements to view this evidence. Defendants have also provided Victor with black and white photographs in response to his discovery request, and have agreed to furnish Victor with color copies provided he bears the costs associated with this discovery.

We find Defendants' discovery responses to Request Nos. 1-3 to be reasonable and in accord with the requirements of the Federal Rules of Civil Procedure, and we therefore find no basis either to compel a further response, or to impose sanctions.  We are unable to compel Defendants to produce evidence that does not exist, and we find no basis to compel Defendants to produce color photographs when they have already made black-and-white copies available.

15

Plaintiff has not explained why he requires color photographs, or why he believes

Defendants should bear the costs of this discovery that he desires.  Accordingly,

Victor's motion will be denied with respect to Request Nos. 1-3.

## 2.   **Document Request No. 4.**

In Request No. 4, Victor requested that Defendants "Provide Plaintiff with

all handheld footage of all escorts of Plaintiff from 4/28/11 through date of

amended filing to search and secure evidence to support abuse and retaliation

claims."  (Doc. 48-1)  Defendants responded by objecting that the discovery

sought was plainly overbroad and unduly burdensome given the issues in the case

given the time period specified.[4]  Nevertheless, Defendants invited Plaintiff to

schedule an appointment to review the available handheld footage for April 28,

2011 (escort from law library to strip cage), and for May 11, 2011 (escort from

yard to cell), by submitting a DC-135A request to the Superintendent's Assistant

at SCI-Coal Township.

Victor seems to believe that Defendants have an ongoing duty to preserve

all video taken of him at any time he is escorted to or from the RHU, apparently

because the Superintendent of the prison required that officers video Victor's

---

[4]  Victor filed his amended complaint on July 12, 2011.  Accordingly, he
sought video footage of all escorts that may have occurred over a period of
approximately two and one-half months.

16

escorts, and because Victor was allegedly the only inmate at SCI-Coal Township

subjected to this procedure.  (Doc. 48, at 2)  However, Victor has not responded in

any meaningful or compelling way to Defendants' unchecked assertion that when

video taken reveals no extraordinary incident, the video footage is recycled in the

ordinary course of business, or to their assertion that Victor's request is simply

overbroad.  To the extent that Victor is suggesting Defendants were duty bound to

preserve any and all video footage of him simply because he was engaged in

litigation with the Department of Corrections and a number of its employees, we

disagree, and find no substantial basis to reach the conclusion Victor urges us to

make.  We therefore decline Victor's invitation to conduct an *in camera* review of

policies that may exist regarding the preservation of video taken of RHU inmates

escorted elsewhere in the prison.  We also find that Victor has not responded

persuasively to Defendants' justification regarding the adequacy of their responses

to Request No. 4, and we therefore find no basis to compel a further response, or

to impose sanctions.

### 3.   <u>Document Request No. 5.</u>

In Document Request No. 5, Victor sought production of all DC-17X

entries concerning him dating from his arrival at SCI-Coal Township through July

12, 2011, as well as all medical documents relating to injuries relevant to the

17

lawsuit.  (Doc. 48-1)  In response, Defendants objected to the request as overbroad and unduly burdensome, as well as irrelevant in part, but agreed to consider a more specific and narrow request.  Victor, in turn, narrowed his request by seeking his DC-17X entries only for May 5, 2010, July 13, 2010, March 24, 2011, April 28, 2011, and May 11, 2011.  (Doc. 50, Ex. B)  Defendants have represented that Victor may make arrangements to review his medical records and certain of his mental health records in response to this discovery request, provided Victor complies with applicable Department of Corrections policies governing the production of such information.

In this regard, when an inmate initiates a request for production of his own medical records, in accordance with the DC-ADM 003, "Release of Information," the Department's procedure provides a method by which he is given a reasonable amount of time to examine and inspect the requested documents.  As part of this procedure, the inmate must initiate this process by submitting Department Form DC-135A "Inmate Request to Staff" to the Superintendent's Assistant or his/her designee at his current institution.  The inmate may then review the documents and obtain copies of any documents at his expense; however, charges for the photocopies are made in accordance with the Department's policies and procedures.  Thus, we understand that the Defendants do not object to Victor's

access to his own medical records. Rather, they simply urge the Court to direct

Victor to comply with these procedures when requesting medical records.

We believe that compliance with the prison regulations is a fitting and

proper procedure for Victor to follow in securing access to these medical records.

Indeed, in this regard we note that courts have frequently directed or encouraged

inmates to comply with reasonable institutional procedures when securing copies

of their own prison medical records for litigation purposes. See, e.g., Bull v.

United States, 143 F.App'x 468 (3d. Cir.2005); Daniels v. Kelchner, No. 05-1601,

2007 WL 2068631 (M.D.Pa. July 17, 2007).[5]  Defendants have represented they

---

[5]  We note that those policies, in part, call for Victor to bear the cost of
making copies of these medical records.  While Victor has not made a specific
request to have the Defendants bear these costs, we note that nothing in 28 U.S.C.
§ 1915 authorizes federal courts to finance or pay for a party's discovery expenses
incurred while prosecuting a lawsuit, even if that party has been granted leave to
proceed *in forma pauperis* under 28 U.S.C. § 1915(a).  Review of the case law
reveals that numerous courts within and without the Third Circuit have recognized
the limitations of federal courts to relieve indigent litigants from the costs of
pretrial discovery. See, e.g., Brooks v. Quinn, 257 F.R.D. 515, 417 (D.Del.2009)
("Although plaintiff is proceeding in forma pauperis, the court has no authority to
finance or pay for a party's discovery expenses....  It is plaintiff's responsibility to
pay for the costs associated with the taking of a deposition."); Augustin v. New
Century TRS Holding, Inc., No. 08-326, 2008 U.S. Dist. LEXIS 96236, at *7-9,
2008 WL 5114268 (W.D.Pa. Nov. 25, 2008) (denying plaintiff's IFP application to
cover costs for discovery requests); Badman v. Stark, 139 F.R.D. 601, 605
(M.D.Pa.1991) (28 U.S.C. § 1915 does not require the government to advance
funds for deposition expenses); Toliver v. Community Action Comm'n to Help the
Econ., 613 F.Supp. 1070, 1072 (S.D.N.Y.1985) (no clear statutory authority for
the repayment of discovery costs for IFP plaintiff); Sturdevant v. Deer, 69 F.R.D.

are prepared to make the requested discovery available provided Victor complies

with these institutional requirements.

Defendants have, however, objected to the wholesale disclosure of Victor's

mental health records, including materials that contain evaluations, observations,

impressions, investigations, and recommendations submitted by psychological

professionals.[6]  Upon consideration, we find Defendants' objection to be well-

taken.  Defendants object to the disclosure of these mental health records, citing

concerns that disclosure of professional evaluations could compromise honest

opinions and frank assessments, and could potentially subject staff and treating

professionals to retribution or otherwise impair the proper assessment of an

inmate, and undermine correctional goals and objectives.  This Court has

---

17, 19 (E.D.Wis.1975) (concluding that 28 U.S.C. § 1915 "does not extend to the
cost of taking and transcribing a deposition."); Ebenhart v. Power, 309 F.Supp.
660, 661 (S.D.N.Y.1969) ("Grave doubts exist as to whether [28 U.S.C. § 1915]
authorizes this court to order the appropriation of Government funds in civil suits
to aid private litigants in conducting pre-trial discovery."); see also Tabron v.
Grace, 6 F.3d 147, 159 (3d Cir.1993) ("There is no provision in [28 U.S.C. §
1915] for the payment by the government of the costs of deposition transcripts, or
any other litigation expenses, and no other statute authorizes courts to commit
federal monies for payment of the necessary expenses in a civil suit brought by an
indigent litigant.").  Thus, as a general rule, the Court lacks the lawful authority to
help finance, or relieve Plaintiff, who is proceeding *in forma pauperis,* from the
costs associated with taking pre-trial discovery.

[6] Defendants' objections to this discovery apply to Document Request Nos.
5 and 9.

previously found such objections to be valid.  See, e.g., Mincy v. Chmiewlewski, No. 05-292, 2006 WL 3042968 (M.D. Pa. Oct. 25, 2006); see also Whetstone v. Bohinski, No. 3:08-CV-2306, 2010 WL 785246 (M.D. Pa. Mar. 3, 2010).  We agree with the reasoning of these decisions, and conclude that any relevance that Victor might perceive in the disclosure of candid psychological evaluations and opinions is outweighed by the Department of Corrections' interest in maintaining the confidentiality of such information.

Accordingly, consistent with Defendants' recommended approach, Victor shall be able to access his DC-17X and medical records, provided he complies with Department of Corrections procedures for obtaining this information, and that he bears the cost for this production.  Additionally, to the extent Victor submits the appropriate documentation and agrees to pay for the discovery, Defendants may redact any mental health records containing evaluations, observations, impressions, investigations, and recommendations submitted by psychological professionals prior to producing such mental health records.

### 4.    **Document Request No. 6.**

In Request No. 6, Victor seeks "the case of any past and present civil actions against any of [Defendants] and results."  Defendants objected to this request on the grounds that it was irrelevant and not likely to lead to discovery of

admissible evidence.  Defendants also object to the disclosure of character

evidence, citing Rule 404 of the Federal Rules of Evidence, and further object to

the document request because it was presented in the form of an interrogatory.

Upon consideration, as an initial matter we do not entirely embrace

Defendants' objections to the extent they are suggesting that Rule 404's restriction

on the admissibility of certain evidence controls whether the underlying

information is discoverable pursuant to Rule 26.

Rule 404(b) governs the admissibility of other acts evidence and provides as

follows:  "Evidence of other crimes, wrongs, or acts is not admissible to prove the

character of a person in order to show action in conformity therewith.  It may,

however, be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or

accident…." Fed. R. Evid. 404(b).  With respect to the admissibility of Rule

404(b) other act evidence:

> While . . . Rule 404(b) is "construed as a rule of
> inclusion rather than exclusion," United States v. Scarfo,
> 850 F.2d 1015, 1019 (3d Cir.1988) (internal quotation
> marks omitted), [the courts] have also cautioned that the
> . . . reasons for introducing prior bad acts evidence may
> be a combination of showing a "consequential fact as
> well as … impugn [ing a party's] character." United
> States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994)
> (quoting United States v. Sampson, 980 F.2d 883, 886

22

(3d Cir. 1992)).  Therefore, "when evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that the [party] has the propensity to commit the [act] charged." United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994) (citing Jemal, 26 F.3d at 1272).

United States v. Lindsay 339 F. App'x 268, 272 (3d Cir. 2009).

Given the fact that Rule 404(b) is defined as a "rule of inclusion", we initially observe that there might be information arising out of other claims brought against the named Defendants which ultimately could be admissible under the Rule as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…." Fed. R. Evid. 404(b).  However, no judgment on the relevance and admissibility of this evidence is possible in the abstract, as any assessment of these issues would necessarily involve a multi-faceted and fact-specific analysis of both the proffered evidence and Victor's claims.

However, in this case, we find that the discovery request, as currently framed, is overly broad, and of questionable relevance.  Indeed, although Victor refers to Document Request No. 6 in his brief filed in support of his motion to compel, he does not explain why he is seeking this information or what relevance he believes it has to the claims in this litigation.  Because we have substantial

doubt as to the relevance of the discovery of any civil actions that may have been

filed against any of the named Defendants regardless of whether such claims were

ultimately meritorious or not, because Victor has not explained why he is seeking

this information, we will deny Victor's motion at this time, without prejudice to

him seeking a narrower discovery response that more precisely explains the

relevance of this information to his claims, and which narrows the scope of the

discovery sought.

## 5.    **Complaints Regarding the Manner of Discovery.**

Finally, to the extent Plaintiff is suggesting that sanctions are warranted due

to delays in production on the part of Defendant Dascani, or Defendants' counsel,

we disagree.  From our review of the materials provided to the Court, and the

parties' arguments and representations, it appears that Defendants have responded

appropriately to Plaintiff's discovery requests, in that they have advised Plaintiff

of the process that he must follow in order to review much of the information he

has requested, and because they have represented that they stand ready to facilitate

this discovery.  We do not find that the minimal delay in production that Victor

claims warrants sanctions, and we do not find that this minimal delay resulted in

any prejudice to Victor or his ability to prepare for this litigation.

## III.   <u>ORDER</u>

Accordingly, IT IS HEREBY ORDERED THAT Plaintiff's motion for

relief, sanctions and to compel discovery (Doc. 47) is DENIED.


        */s/ Martin C. Carlson*
        Martin C. Carlson
        United States Magistrate Judge